The case on our calendar for argument this morning is number 19-3163, United States v. Rosario. Good morning, Your Honor. Good morning. Yes. This is Georgia Hynde. I represent the appellant Antonio Rosario, who is appealing the imposition of a 15-year above guideline sentence at his 2019 resentencing after the district court vacated his 924C conviction in light of United States v. Davis. Mr. Rosario is presently serving the last 16 months of his 180-month sentence, having endured close to a year of harsher than usual conditions of incarceration due to the COVID-19 pandemic. He is also more vulnerable to serious complications from a COVID infection due to his history of COPD, asthma, obesity, and high blood pressure. Conditions the government has conceded amount to extraordinary and compelling circumstances that could support compassionate release. Yet the district court has repeatedly declined to reconsider any reduction to the above guideline sentence it most recently imposed before these extraordinary circumstances could have been foreseen. And despite Mr. Rosario's commendable record of clear conduct and outstanding work performance during the extended holdover stay at the Brooklyn NBC prior to and during the pandemic. When he appeared for resentencing in September 2019, Mr. Rosario's guideline range called for a sentence of 110 to 137 months based on an adjusted offense level of 26 and a criminal history category of 5. This guideline computation took into account all specific offense characteristics, including the possession of a weapon and the attempt to steal a controlled substance, as well as each of Mr. Rosario's prior felony convictions. The district court nevertheless indicated that a 15-year sentence it previously imposed was still appropriate and correct, justifying the substantial upward departure specifically on the court's conclusion that Mr. Rosario's criminal history category was understated. This court has repeatedly recognized that whenever a court links a departure to a defendant's criminal history, its authority is more limited than its broader discretion to vary from a sentencing guideline range under 3553A. The guideline computation must first represent a substantial understatement of the defendant's criminal history based on reliable information that the guidelines did not take into account. Excuse me, the time. Mm-hmm. Sure. You said that we've held that the district court's authority to vary is limited. More limited. It's more narrow. Mm-hmm. Well, we still are in a discretionary regime now where the district court calculates the guidelines. We are, Your Honor. Right? So isn't it a little misleading to frame the window within which the district court must operate in that way? It wasn't meant to be. Well, okay. But the district court gave careful consideration to Mr. Rosario's criminal history, his behavior patterns, and discussed his record and the aspects of this crime in some detail, both on the original go-around and on the resentencing. Mm-hmm. And your argument is that she was not free to do what she did? Is that right? I believe, Your Honor, when you tie an upward departure to an understated criminal history category, the guidelines require, first of all, that it's a horizontal departure. You can go all the way up to a level six apart from a criminal history that is particularly egregious and serious is what the guidelines call for in, I think, 4A1.1 application notes. This criminal history is certainly an unfortunate one, but it wasn't the most egregious. And the offenses he was convicted of were all offenses he got full measure of criminal history points for. And to go beyond a level six, which would, by the way, have been a 120 to 150-month sentence at the time of his resentencing, and even at the time in 2019 would have been a 120 to 150-month sentence at the time served for the defendant, it requires additional justification. But didn't the district court give that additional justification? She focused also on the fact that he had declined to participate in the RDAP program, which is a hard program. But she said she views it an indication that despite what he said, that he's not really ready to change his approach. She also pointed out that he's not really expressed any remorse for what he did or taken responsibility from it. Weren't those legitimate things to consider? Well, they could have been legitimate in certain circumstances. Mr. Rosario actually explained to the court at the time of his resentencing that his refusal to participate in RDAP had been because it occurred at the time he was eligible to start the program at a time when his mother was ill and soon after passed away. And he wanted to have a clear head before he did it. And the BOP folks said, fine, you can sign up for it again when you're ready. And this was not a question of avoiding a hard program. It was an attempt to do the hard program when he could do a good job with it and not be disqualified and lose out because his emotional condition was understandably elsewhere. I heard that explanation and I think didn't fully accept it. Well, understandable, Your Honor. But if that was the case, that this was going to be something that was used to enhance the defendant's sentence, I think there should have been more inquiry of the BOP personnel before that was a consideration. And even if it were a consideration that had been established to some effect, the things that have happened in almost two years since Mr. Rosario's most recent infraction show that he is somebody who is ready to come home. I mean, he will be home this year, one way or the other, with good time credits. He will be eligible for a halfway house as early as May and as late as November. And he will be coming home and he's meanwhile being exposed as a vulnerable defendant or a victim to the continuing difficulties of the COVID pandemic in prison. There should be a point where the considerations of sentencing goals and medical needs of the defendant are balanced in a way that considers the pandemic and considers the hardships inmates are suffering under it and allows either a reduction in an over-guideline sentence to start with or to allow for compassionate release or release to home confinement. When did you seek compassionate release? In March, I learned that Mr. Rosario was on the list of individuals that MDC had identified as vulnerable. So that was late March of 2020. Almost a year ago. Yes. An application was made to the warden originally.  And originally denied compassionate release in June. And invited Mr. Rosario to reapply if he was still at the MDC and hadn't been relocated to a facility. I mean, he's been in holdover status and hasn't been able to participate in programs in any case. But he was still at the MDC three months later, so we renewed our application. That request was denied in December. And most recently, the district court has invited him to reapply in May if his record of clear conduct continues. I'm not quite sure at this point. He's been in quarantine since early September when he was leaving the MDC. He kind of passed through Lewisburg for a few months. He remained in quarantine the entire time he was there. And at this point, he's at Hazleton. And remains in quarantine, I assume, because I haven't been able to hear from him or reach him. So I'm not sure if that's his designated facility or if he even has the ability to participate in programs while he's there. But he has such a small amount of time left, he may be disqualified on that basis as well. Okay. Thank you. You have reserved a minute of rebuttal. Yes. Thank you. Thank you, Your Honors. We'll hear from the government. May it please the court, my name is Margaret Graham. I represent the United States on appeal, and I represented the United States below. The district court's amended judgment of conviction and denial of the defendant's motion for a compassionate release should be affirmed. Beginning with the first issue raised by the defendant, Judge Caproni did not commit procedural or substantive error when she sentenced the defendant to 180 months imprisonment for his participation in a violent armed robbery of a pharmacy. At the resentencing, Judge Caproni carefully considered the violent nature of the offense conduct, the defendant's extensive and violent criminal history, and the other 3553A factors in imposing the sentence. She did not commit procedural error when she departed upwards from the guidelines in imposing the sentence. And in any event, any procedural error would be harmless, as the departure was also independently justified as a variance. Further, the defendant's 180-month sentence was not substantively unreasonable, as this court has already found when the defendant's previous sentence was on appeal. Continuing to the second issue on appeal, Judge Caproni also did not abuse her discretion when she denied the defendant's application for compassionate release. She carefully considered the defendant's application and held that, even assuming that the defendant's medical condition presented extraordinary and compelling reasons, the section 3553A factors outweighed those reasons and mitigated against his release. This carefully reasoned decision was not an abuse of discretion, and should be affirmed. I welcome any questions. Ms. Graham, it is puzzling, and I am not sure I have ever seen anything quite like it, where one of the three counts of conviction at trial dropped out of the case entirely in light of Davis, and yet the analysis that the district court seemed to adopt and the sentence were really exactly the same. Shouldn't an additional count of conviction matter? Yes, Your Honor. The Second Circuit has addressed this before in cases like United States v. Weingarten, where it explicitly held that it was acceptable to give the same aggregate sentence where a count was vacated, but the offense conduct remained the same. As long as the judge carefully considered the sentencing factors and the new sentence was justified by the reasoning. In fact, the Supreme Court, in its opinion, in Davis, itself noted that this was a possibility, stating, As this Court has noted, when a defendant's 924C conviction is invalidated, Courts of Appeals routinely vacate the defendant's entire sentence on all counts so that the district court may increase the sentences for any remaining counts if such an increase is wanted. Okay, so you think it really doesn't, that it's established that it need not make any difference in that the district court is entitled to re-sentence, basically doing the same analysis as on the first go-round? That's correct, Your Honor. And here, of course, the offense conduct was exactly the same. It was the same violent armed robbery. It was the same criminal conduct. In fact, the defendant was a bit worse off because he had additional BOP disciplinary infractions since the last sentencing. And the district court was entitled to and did carefully consider all relevant factors and clearly understood her sentencing authority in imposing the new sentence. And am I right in understanding that the district court did invite Mr. Rosario, possibly, to come back to reapply for compassionate release, given his health situation? And, you know, he may have been moved to a facility that has a worse COVID profile than another, that there may be changed circumstances that would justify a reapplication? Yes, Your Honor. In the original – I apologize. No, please. In the original June 2020 order, the district court said that Mr. Rosario could come back in three months, as you noted, if he had not been transferred out of MDC, which was one of the things that he was very concerned about. He, in fact, did come back, and he was transferred shortly thereafter. And so the district court, again, considered all the factors, denied that motion. Mr. Rosario then again moved for reconsideration in November of this year and just on December 24th. Again, carefully considered all the factors, carefully considered the arguments, wrote a five-page order, again, denying that order. But again, noting that it was without prejudice and that he could apply again. So that is still a possibility for the coming months? Certainly, Your Honor. Okay, thank you. If there are no further questions, I rest on my submission. Thank you very much. Ms. Hynde, you have a minute of rebuttal. Thank you, Your Honors. Your Honors, just first, while the court previously held it was a subjectively reasonable sentence at the time of Mr. Rosario's last appeal, that was when 180 months was within the guideline range, which is relevant, if not mandatory at this point, and certainly before the pandemic had its effect. And also before Mr. Rosario had served more than 90% of the 180-month sentence and demonstrated close to two years of positive behavior that the district court itself agreed showed that he may have turned a corner. He is going to be coming home, again, for halfway house consideration as early as May. That is when the district court has permitted him to reapply for compassionate release, which may be mooted if he is released to a halfway house by then. And it should be, for an individual serving an above-guideline sentence and having served a substantial portion of that above-guideline sentence, it should be deemed greater than necessary during a pandemic to keep him there when he is a vulnerable inmate who is risking health complications by staying in prison. Thank you very much. Thank you. Thank you, Ms. Hynde. Thank you, Ms. Graham. We will take the matter under advisement. That concludes our oral arguments this morning. The clerk will please adjourn court. Court stands adjourned.